Filed 7/7/25  In re J.T. CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re J.T., a Person Coming Under the Juvenile Court Law. | |
| | D085465 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. EJ4750B) |
| v. | |
| M.B. et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of San Diego County, Alexander M. Calero, Judge.  Conditionally reversed and remanded with directions.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant M.B.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant D.T.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Evangelina Woo, Deputy County Counsel, for Plaintiff and Respondent.

Mother M.B. and Father D.T. appeal from the juvenile court's findings and orders terminating parental rights over their child J.T. at the Welfare and Institutions Code section 366.26 hearing. They raise four contentions that the Health and Human Services Agency failed to comply with the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.). The Agency concedes error as to two contentions, and we conclude the Agency partially erred as to the others. Thus, resolving this matter by memorandum opinion (see generally *People v. Garcia* (2002) 97 Cal.App.4th 847), we accept the Agency's concessions and conditionally reverse and remand.

I.

In March 2022, the Agency filed a petition under section 300(d), alleging a member of the household sexually abused the child. At the detention hearing, the court found ICWA did not apply.

The maternal grandfather was present in person for a July 2022 hearing, but the court made no ICWA inquiry that day. The social worker was also present in person, but there is no documentation of the Agency asking the grandfather about Native American ancestry on that day. The record is silent as to any Agency efforts to reach the maternal grandfather after the hearing or to obtain his contact information, if needed.

During the September jurisdiction hearing, a social worker testified the paternal uncles who were in the home with the paternal grandmother denied Native American ancestry. Although the testimony did not specify which of three paternal uncles the social worker interviewed, we infer they were Michael and Jason, who resided in San Diego with paternal grandmother and

2

Father.  The third paternal uncle resided in Mexico.  There were no documented efforts to reach the third uncle or to obtain his contact information.  Regardless, the court found ICWA did not apply.  It took jurisdiction, declared the child a dependent of the court, placed him with relatives, and ordered reunification services for the parents.

At the combined 12-, 18-, and 24-month review in March 2024, the court terminated reunification services and set a hearing under section 366.26.

At the contested section 366.26 hearing, maternal grandmother disclosed possible Cherokee lineage.  This was the only claim of Native American ancestry throughout the case.  The court continued the hearing to allow the Agency to make additional inquiry.  That day, the social worker "attempted to contact" paternal grandfather and Jason about Native American ancestry "to no avail."  She also left a voicemail for Michael with her contact information and requested he call her back, although he did not.

Though there are three federally recognized Cherokee tribes in the United States, the Agency notified only two—the Cherokee Nation and the Eastern Band of Cherokee Indians.  There are no documented efforts to contact the Bureau of Indian Affairs.

In January 2025, paternal uncle Jason appeared for the contested section 366.26 hearing and denied Native American ancestry.  At the same hearing, the court found ICWA did not apply and terminated parental rights.

## II.

Mother and Father contend the Agency failed to comply with ICWA because the Agency (1) did not make informal inquiry of the United Keetoowah Band of Cherokee Indians; (2) gave no indication of what identifying family information the social worker provided to the two tribes it

3

contacted; (3) did not make meaningful efforts to interview maternal grandfather, paternal grandfather, Michael, and the paternal uncle in Mexico; and (4) failed to contact the BIA.

Generally, we review ICWA findings for substantial evidence. (§ 224.2(i)(2).) When the facts are undisputed, we independently determine ICWA compliance. (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1051.)

The Agency concedes error as to the first and second contentions and agrees the matter should be conditionally reversed and remanded for further inquiry with the tribes. (See *In re Dezi C.* (2024) 16 Cal.5th 1112, 1136.)

We accept these concessions. Section 224.2(e)(2)(C) requires the Agency to contact any relevant tribes when there is reason to believe the child may have Native American ancestry. Here, failure to contact all three Cherokee tribes was error because the claim of Cherokee lineage could apply to any of the three tribes. The Agency also erred by not providing any documentation of what identifying information it provided to the tribes it did notice. (See *In re S.M.* (2004) 118 Cal.App.4th 1108, 1116 [notice must include name, birthdate, birthplace of minor and relatives, tribal affiliation, copy of petition, etc.].)

As to the two remaining contentions, the Agency counters (1) contacting the BIA is only required when tribal affiliation is unknown and (2) it made sufficient efforts to inquire of relatives not readily available. We disagree on the first point and partially disagree on the second.

Starting with efforts to contact the BIA, section 224.2(e)(2)(B) states further inquiry includes "[c]ontacting the [BIA] . . . for assistance in identifying the names and contact information of the tribes in which the child may be a member or citizen, or eligible for membership or citizenship in, and contacting the tribes and any other person that may reasonably be expected

4

to have information regarding the child's membership status or eligibility." Thus, the Agency is required to contact the BIA even when it has a named tribe. (See *In re K.T.* (2022) 76 Cal.App.5th 732, 743–744 [agency should have tried to contact two relatives, BIA, and two identified tribes].)

As to contacting certain family members, substantial evidence supports the Agency's efforts to contact paternal uncle Michael and paternal grandfather. Record evidence shows Michael denied Native American ancestry to the social worker prior to September 2022. It also indicates the Agency left a callback message for Michael in August 2024. The efforts to reach paternal grandfather could have been documented with more detail, but we conclude they were also sufficient. (See *In re D.S.*, 46 Cal.App.5th at p. 1054 [although Agency could have documented its efforts in greater detail, information was sufficient to support trial court's finding of ICWA compliance].) The Agency's documented attempt to reach paternal grandfather implied the social worker expected a return contact from him. The Agency is not required to "'cast about'" for leads. (*Id*. at p. 1053.) Even assuming the Agency was unable to leave a callback message, the effort was enough. (See *id*. at p. 1047, fn. 4 [inquiry sufficient when Agency attempted to contact each tribe at least twice, and two tribes had full voicemail boxes].)

Unlike the first two family members, we conclude efforts to inquire of maternal grandfather and the third paternal uncle were insufficient. The maternal grandfather was readily available for inquiry when he was present for the July 2022 hearing. At that time, the court and Agency should have inquired about any Native American ancestry. Once that opportunity passed, the Agency should have followed up with him directly for an initial inquiry to comply with ICWA or, if it lacked his contact information, asked, among others, Mother, maternal great aunt, older sibling Aiden (who the court asked

5

about Native American ancestry), and maternal grandmother for his contact information. (See *In re Oscar H.* (2022) 84 Cal.App.5th 933, 937 [inquiry insufficient when department could have asked father for contact information of his relatives].) As to the third paternal uncle that lives in Mexico, the record is silent as to the Agency's efforts to contact him. To reach him, the Agency could have asked, among others, Father, Jason, Michael, Aiden, or paternal grandmother (before she passed). (See *ibid.*)

Given the Agency's request and our conclusion to conditionally reverse and remand, the Agency should on remand (1) seek to obtain contact information for—and if obtained, follow up with—the maternal grandfather and the unidentified third paternal uncle that lives in Mexico and (2) contact the BIA. As conceded by the Agency, it should also remediate the deficient inquiry by (3) contacting the third Cherokee tribe and (4) providing all tribes with the requisite identifying information.

III.

We conditionally reverse the juvenile court's order terminating Mother's and Father's parental rights. We remand to the juvenile court for the limited purpose of complying with the inquiry provisions of ICWA and related California law.

On remand, the Agency is directed to (1) seek contact information for and follow through with the maternal grandfather and the unidentified paternal uncle in Mexico, (2) contact the BIA, (3) contact the United Keetoowah Band of Cherokee Indians, and (4) provide all three Cherokee tribes with the requisite identifying information.

If, after inquiry, neither the Agency nor the juvenile court has reason to believe J.T. has Native American ancestry, the order shall be reinstated. Alternatively, if, after inquiry, the Agency or the juvenile court has reason to

6

believe or knows J.T. has Native American ancestry, the juvenile court shall proceed in conformity with ICWA and related California law.  In all other respects, we affirm the judgment.


CASTILLO, J.

WE CONCUR:


DATO, Acting P. J.


KELETY, J.